The bill in equity in this case was filed by the successors in trust of the testator's appointees, as trustees under the last will *Page 182 
and testament of Rufus Greene, late of Providence, against the beneficiaries under the will, to obtain the instructions of the court in administering the trusts. The facts involved in the case, which was heard on bill and answers, are stated in the opinion of the court.
The will in question is as follows:
This is the last Will and Testament of me Rufus Greene of the City and County of Providence and State of Rhode Island.
I bequeath all the consumable household stores, provisions linen, china, and household furniture of which I shall die possessed to my beloved wife Ellen Maria Greene absolutely.
I devise all the real estate to which I shall be entitled at my decease and I bequeath the residue of the personal estate to which I shall be then entitled, after the payment of my just debts funeral charges, and expenses of settling my estate to Rufus Greene Junior my oldest son, Henry C. Cranston, my copartner in business and Charles P. Robinson, Attorney, the survivors and survivor of them, their heirs executors and administrators.
In Trust, however, for the following purposes:
First. From and out of the income of my personal estate to keep all my real estate in good repair and fully insured, and all taxes government charges and assessments thereon for improvements paid up and discharged.
Second. To place the mansion where I now reside at the disposal of my wife Ellen Maria Greene [except the stores beneath the same] for and during the term of her natural life for the use of herself and her minor children Robert Lloyd, Archer, and Howard, together with such other children, if any she have, born of our the said Rufus and Ellen M. Greene's coverture. If however my said wife shall choose to rent said house, then she is to receive the income derived from the same by my said Trustees to and for the use of herself and the said children share and share alike.
Thirdly. To maintain my summer home at Pawtuxet in good order as aforesaid for the use and occupation of my said wife and her said children.
And it is my earnest prayer and direction that all my children shall after my death as in my life freely come and enjoy the same whenever they or either of them may choose. *Page 183 
 Fourthly. To pay unto my beloved daughter Minerva Rogerson, wife of Dr. E.C. Angell of New York City the gross rents and profits of the following described personal and real estateviz;
1. Of the mortgage security which I now hold upon the house Sixty one Lexington Avenue in the city of New York now occupied by said E.C. Angell.
2. The rents and profits of my house on land leased from the Dwight heirs, situate on the North East corner of Bacon and North Main street.
3. The rents and profits of the Vero estate so called also situate in said Providence on High street and running through asper plat upon Winslows lane, with three dwelling houses thereon.
Together with the following memorial of her mother to be by said Trustees delivered unto her, viz; the ladies writing desk, which was her mothers betrothal present.
Fifthly. To pay over unto my beloved daughters Sarah Bucklin Cheney, wife of George A. Cheney and my dear daughter Dorcas H. wife of Eben A. Kelley each one half of the gross rents and profits of the following described real estate viz;
1. Of the property situate on the South West corner of Carpenter and Dean Street in said Providence, bounding about one hundred and ninety feet on Carpenter street and about one hundred on Dean Street and containing nine dwelling houses thereon.
2. Also the rents and profits of the property situate on the North East corner of said Carpenter and Dean Streets, with the two dwelling houses thereon standing.
Sixthly. To pay over to my ever faithful daughter Harriet L. wife of Russell W. Wing of Caldera in Chili and to my affectionate daughter Annie C. unmarried each one half of the gross rents and profits of the following described real estate,viz;
1. Of the property on the North West corner of Chestnut and Friendship street in said Providence, including the land leased from Samuel Gladding and the improvements on said leased land, and the two dwelling houses and the shops thereon standing.
2. Also the rents and profits of the dwelling house and lot situate on the South West corner of Richmond and Friendship streets in said city.
In case the said Harriet L or Annie C. should die without descendants *Page 184 
surviving at their decease, the said Trustees are directed to convey to such person or persons, as such daughter by last will and testament has designated, a sum not to exceed five thousand dollars, which said sum my said Trustees are hereby directed to raise by mortgage or sale of the realty from which the said shares of the said Harriet and Annie are to be derived, and in case of sale to devote the residue of said sum, or the rents and profits as hereinafter set forth.
The incomes of my said daughters are to be paid them for and during the term of their natural lives, the first payment within three months after my decease, and quarterly thereafter, to her and their use and enjoyment free from the control or interference of their present or any future husbands, and their receipts to be notwithstanding coverture an effectual discharge for said rents and profits.
Upon the death of any daughter to pay her share of said rents and profits unto her then surviving child or children, or grand children, grand children to take their proportionate share of their father or mothers share.
But if any daughter die without descendants her share, except as provided for above by the last will of the said Harriet or Annie, is to go to the surviving daughters, and daughters' descendants, when a daughter has deceased leaving such.
Whenever the youngest child of any daughter in being at my decease shall have reached the age of twenty one years then my said Trustees are to divide distribute and convey the said property out of which my daughters' shares are to be derived, equally among said daughters, and the children or grand children of deceased daughters, share and share alike, descendants of daughters taking their proportionate share of the father's or mother's estate.
Seventhly. The said Trustees are to retain that portion of my personal estate now invested in the business of Greene 
Cranston, bankers as it now is so long as my said partner in their judgment is physically able to manage the same or until he shall to said Trustees in writing signify his unwillingness further to continue said business or until in the judgment of a majority of said Trustees the said business shall have become hazardous and unprofitable, sharing with said Cranston as now the profits and losses *Page 185 
of said business equally, the Greene Trustees one half, the said Cranston one half, to be divided every three months from and after my decease.
Eighthly. From and out of the profits of said business, together with the rents profits and dividends and earnings of all my other personalty and realty, not hitherto ordered paid out in provision for my daughters and their issue and otherwise:
To pay unto Rosa Keelwa as long as she remains in my family the sum of Thirty Dollars a year, for and as a slight token of her care and kindness in the family, to be paid in equal quarterly payments.
2. To pay over to my faithful wife Ellen Maria Greene, my loving sons Rufus, Isaac, Chace Lincoln, Robert Lloyd, Archer, Howard, and such other children male and female as may be born unto me by present or any future wife if any such there be, the remaining income, as tenants in common share and share alike.
The share of such as at my decease shall have reached their majority are to be paid every three or six months, as said Trustees may deem best, and in full.
But the shares of all said children who are minors at my decease are to be paid to their guardian for their maintenance and education. And whatever of the share of each may not be necessary for said maintenance and education is by said guardian to be invested for the benefit of said minors to be unto them paid upon their majority for their advancement or settlement in life.
The share of said wife, which is in lieu of dower in my real estate and all benefit from my personalty, is upon her death to be paid to said sons, future sons and daughters, if any there be in equal proportions, descendants of the same taking proportion of parent's share.
The share of said income of any said child viz. son present or future or future daughter, dying with no children surviving at his or her decease is by said Trustees equally to be divided among all my male children and future female children surviving at said decease and among the issue of their bodies, when a child has died leaving issue, who shall take per stirpes and not percapita.
And when the youngest child of my youngest son shall have reached the age of twenty one years, then my said Trustees are *Page 186 
to divide distribute and convey as in their judgment they shall deem best all said business capital, realty, profits dividends and earnings equally to said male children and daughters born subsequent to the date of this will, the children of any deceased child taking his proportionate share of his father's and mother's realty and personalty.
In every case the decision of any question in regard to the management of these trusts shall be governed by a majority of the three Trustees, always understood that the number of said Trustees is to be maintained at three.
I declare that if my Trustees hereinbefore named or any or either of them shall die in my life time or if they or any or either of them or any Trustee appointed by competent authority shall after my death die or be unwilling incompetent or unfit to accept or execute the trusts of my will or desire to retire from the office, then he they or any person beneficially or equitably interested in the estate may apply to the said Court of Equity or any authority thereunto lawfully authorized to fill any vacancy in said number of three Trustees or to remove any unwilling incompetent or unfit Trustee.
And I exempt any and every Trustee of my will from liability for losses occurring without his own willful neglect and default, and authorize him to retain and to allow to his Cotrustees all expenses incident to the trusteeship.
With full power in said Trustees to make any and all conveyances with as good title as I myself might have made, which may become necessary in the performance of their trust and for the benefit of my said estate.
As well as to change from time to time if in the judgment of said majority it may become beneficial and necessary the investment of any of said trust funds and even the real estate, if necessary to protect any one or more beneficiaries to any other and others of the like nature as near as may be.
I appoint my dear wife Ellen, guardian of the persons and estates of my minor children during minority.
I appoint my Trustees hereinbefore named Executors of this my last will and testament hereby revoking all other wills, and direct that no bond be required from my Executors and Trustees. *Page 187 
In testimony whereof I have hereunto set my hand and seal at Providence this Tenth day of November A.D. 1871.
RUFUS GREENE. [L.S.]
Signed, published and declared by Rufus | Greene as and for his last will and | testament, in our presence who have at | JAMES C BUCKLIN, his request in his presence and in the | WM. B. GREENE, presence of each other hereunto set our | ASA K POTTER. names as witnesses. |
The purpose of this suit is to get from the court a construction of two clauses in the will of the late Rufus Greene, deceased. The first clause is the following, to wit:
"Whenever the youngest child of any daughter in being at my decease shall have reached the age of twenty one years then my said Trustees are to divide distribute and convey the said property out of which my daughters' shares are to be derived, equally among said daughters, and the children or grand children of deceased daughters, share and share alike, descendants of daughters taking their proportionate share of the father's and mother's estate."
Rufus Greene executed the will the day before he died, November 10, 1871. He had then living a wife and eleven children, six sons and five daughters. Four of his daughters were already married and had children. The fifth was on the eve of marriage. The testator left his entire real and personal estate, except household stores, furniture, c., to trustees, in trust for the following purposes, to wit: First, "From and out of the income of my personal estate to keep all the real estate in good repair and fully insured, and all taxes government charges and assessments thereon for improvements paid up and discharged."Second, to pay to his five daughters the gross rents and profits of certain specified real and personal estate, or, in case of the death of either of them, to her children or grand children. Third, to pay the rents and profits of the rest of the estate, after deducting the charges aforesaid, to the widow and the other children, including after born sons or daughters, until the youngest child of the youngest son shall have attained majority. The effect of the will, at the testator's *Page 188 
death, was to give the widow and the sons the larger proportionate share of the property. The youngest child of the testator's second daughter attained the age of twenty one, August 2, 1882, being the first child of either of the daughters to come of age. The widow and the sons, whose portions, under the will, are subject to the onerous charges aforesaid, contend that the time has come for the termination of the trust in favor of the daughters, under the clause above recited, thus relieving them of the burden. The daughters contend that the time has not come, and will not come, until the youngest of all the children of the daughters, whether born or to be born, has reached the age of twenty one years.
The phrase, "the youngest child of any daughter," is ambiguous. It may mean any daughter's youngest child, or it may mean the youngest of all the children of the daughters, according to the intent with which it was used. Whether it was used in the one meaning or the other is to be determined from an examination, not only of the clause in which it occurs, but also, unless the clause is so clear as to be conclusive, of the entire will. In the clause in which it occurs, the phrase was immediately preceded by the word "whenever." The word "whenever" is often used as equivalent to "as soon as." It is contended that here the word was so used, and it is argued that, if so, the first youngest child to come of age is the child that was meant. The word "whenever," however, though often used as equivalent to "as soon as," is also often used where the time intended by it is, and will be, until its arrival, or for some uncertain period at least, indeterminate. We do not think it is entirely clear, looking only to the clause in which the word occurs, that it was not used in the latter rather than the former sense; for if the testator was not aiming at remoteness of time, why the youngest
child? or if an early time was in his mind, why measure it by an indeterminate minority at all?
Apparently, if we look into the will at large, the purpose of the trust was to tie up the property for the beneficiaries, giving them the rents and profits, and putting the corpus or principal beyond their control. In the case of the sons, the property is so tied up until the youngest son of the youngest son attains his majority, the apparent purpose being to postpone the period of distribution *Page 189 
to a distant future. It seems to us that this reflects some light upon the testator's purpose in regard to the daughters; for the sons and daughters being included in the same trust, we naturally expect to find that they are treated alike, or substantially alike, in regard to the duration of the trust. The will contains other indications that the testator intended to postpone the division for a long and indefinite time. Thus the will makes provision, not only for the death of the daughters, but also for the death of their children, and the birth of grand children or descendants during the continuance of the trust and in the division under it. In view of these features of the will we have come to the conclusion that the word "whenever," in the clause above recited, was not used as equivalent to "as soon as," as if the testator were, as it were, impatiently anticipating the arrival of the time for division, but was adopted because in his mind the probable time of division was indeterminate; and we have further come to the conclusion that the time for division has not yet arrived.
The youngest child, among the children of the daughters, who was in being when the testator died, was a son of the third daughter, who, if he had lived, would be twenty one years old August 9, 1891. It is contended for the widow and sons that the words "in being at my decease," in the clause above recited, were predicated of "the youngest child," not of "any daughter," so that if the child whose coming of age was to determine the time of division was not the first youngest child to come of age, it was this son of the testator's third daughter. This son, however, is deceased, and, therefore, under this construction, it is argued that, inasmuch as he can never come of age, the time for division has already arrived. We think, however, that if the construction be conceded, this conclusion does not follow; for the cases cited show that when a division is delayed during the minority, not on account of the minor, but for purposes independent of him, the minority being used as a measure of time, the division will not be accelerated by the minor's death.Boraston's case, 3 Rep. 19 a; Sweet v. Beal, Lane, 56;Carter v. Church, 1 Chanc. Cas. 113; Coates v. Needham, 2 Vern. 65; Titus v. Weeks, 37 Barb. S.C. 136; and see, also,Sammis v. Sammis, ante, p. 123. We think the case at bar falls under these cases, if the third daughter's said son was the child *Page 190 
whose coming of age was to determine the time of division. We have been requested to decide whether said son was the child meant, or whether the child meant was not the youngest of the children of the daughters, whether in being at the testator's death or to come into being thereafter, the words "in being at my decease" being construed to refer, not to "the youngest child," but to "any daughter." We think it is enough for us, at present, to decide that the time for the division has not yet arrived. Before it is necessary to decide again whether it has arrived or not other parties may have become interested in the question, who, if we should decide it now, would not be bound by our decision.
The second question arises on the following clause of the will, to wit:
"The share of said income of any said child viz. son present or future or future daughter, dying with no children surviving at his or her decease is by said Trustees equally to be divided among all my male children and future female children surviving at said decease and among the issue of their bodies, when a child has died leaving issue, who shall take per stirpes
and not per capita."
The income referred to is the income of the trust estate remaining for the widow and sons after the deduction of all charges thereon. One of the sons, Rufus Greene the younger, died December 14, 1881, leaving a wife and an infant daughter, and leaving a will by which he devised and bequeathed his entire estate to his wife. The question is, whether the share of the income which would have been payable to him if he had lived is now payable to his daughter. The share of a deceased son, it will be observed, is given over, if he dies without children, but it is not expressly provided what shall be done with it if he dies leaving children. We think it is clearly implied that in such a case the children are to have it; for, let it be noted, that the gift over of income under this very clause, in case a son or future daughter has died leaving issue, is to such issue in his or her stead. The implication is likewise corroborated in other parts of the will. Thus it is expressly provided that the widow's share of income shall, upon her decease, "be paid to said sons, future sons and daughters, if any there be, in equal proportions, descendants of the same taking proportion of parent's share." And in the provision *Page 191 
for the final division of the estate it is expressly declared that "the children of any deceased child" shall take his father's or mother's "proportionate share." And if we recur to the trust for the daughters we find it expressly provided that, if a daughter dies leaving children or grand children, they are to take the mother's share, not only of the corpus or principal, but also of the rents and profits. It cannot be supposed that a testator who was so careful in all these instances to look out for children or grand children, and have them take the share of a deceased parent, intended here to exclude them. Moreover, if the child here does not take the father's share of the income, it will fall, as far as we can see, into the estate and be finally divided as a part of it, the other beneficiaries thus getting in the end, less the child's share, all that they would have gotten, year by year, by the express terms of the clause, if there had been no child. In view of these indications and results, it seems to us that the only reasonable conclusion is that it was intended that the children of a deceased parent should succeed to his right in the income as well as in the corpus of the estate. We are aware that the rule in regard to devises and bequests by implication is very strict, but we do not think it is so strict as to force us to disregard a conclusion which is so irresistible. 2 Jarman on Wills, 5th Amer. ed. 147; 2 Redfield on Wills, 2d ed. 203; Ex parte Rogers, 2 Madd. 449, 455;Wainewright v. Wainewright, 3 Ves. Jun. 558; Harman v.Dickenson, 1 Bro. C.C. 91; In re Blake's Trust, L.R. 3 Eq. 799. We, therefore, decide that the share of income, which would have been payable to Rufus Greene the younger, if he were living, is payable to his daughter.